# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JULIE HOOPER<br>8013 Cox Colby Road<br>Glouster, Ohio 45732, | ) ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| TRIMBLE BOARD OF EDUCATION<br>One Tomcat Drive<br>Glouster, Ohio 45732, | ) ) ) ) ) | **JURY DEMAND ENDORSED HEREIN** |
| Defendant. | ) | |

Plaintiff, Julie Hooper, by and through undersigned counsel, as her Complaint against Defendant Trimble Board of Education ("Trimble"), states and avers the following:

## PARTIES, VENUE, & JURISDICTION

1. Hooper is a resident of the village of Glouster, Athens County, Ohio.

2. At all times herein, Hooper was acting in the course and scope of her employment.

3. Trimble is a school board located in Athens County, Ohio.

4. Trimble is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq*.

5. At all times herein, Trimble was acting in the course and scope of her employment.

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Hooper is alleging a Federal Law Claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.; and the Family & Medical Leave Act ("FMLA"), 29 U.S.C § 2601 *et seq.*

7. All material events alleged in this Complaint occurred in Athens County, Ohio.

8. This Court has supplemental jurisdiction over Hooper's state law claims pursuant to 28 U.S.C. § 1367 as Hooper's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

10. Within 300 days of the conduct alleged below, Hooper filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-01218 against Trimble ("Hooper EEOC Charge").

11. Hooper dually filed the Hooper EEOC Charge with the EEOC and the Ohio Civil Rights Commission.

12. On or about March 9, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Hooper regarding the Charges of Discrimination brought by Hooper against Trimble in the Hooper EEOC Charge.

13. Hooper received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

14. Hooper has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

15. Hooper has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

16. In or about August 2014, Hooper began working for Trimble.

17. Hooper worked at Trimble Middle-Elementary School.

18. Trimble employed Hooper as a cook.

19. Hooper has anxiety, depression, and centronuclear myopathy ("Hooper's Conditions").

20. Centronuclear myopathy is a congenital condition that causes severe muscle weakness.

21. Hooper's Conditions are physical and/or mental impairments.

22. Hooper's Conditions significantly limit her in one or more major life activities, including working.

23. Hooper has a record of physical and/or mental impairment.

24. Because of Hooper's Conditions, Trimble perceived Hooper as disabled.

25. Hooper is disabled within the meaning of ADA.

26. Hooper is disabled within the meaning of R.C. § 4112.01 *et seq.*

27. Trimble was, at all times hereinafter mentioned, a public agency, as defined in 29 U.S.C § 203(x).

28. At all times relevant herein, Hooper was employed by Trimble for at least 12 months and had at least 1,250 hours of service with Trimble and therefore was an "eligible employee" under FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

29. On or about September 16, 2019, Hooper had an anxiety attack at work ("Anxiety Attack").

30. Billie Limo, Trimble's cafeteria supervisor, witnessed the Anxiety Attack.

31. On or about September 16, 2019, Billie Limo advised Hooper to go to the emergency room due to the Anxiety Attack.

32. On or about September 16, 2019, Hooper went to the emergency room due to the Anxiety Attack.

33. In or about September 2019, Hooper's doctor ordered her to take leave from work due to Hooper's Conditions ("Doctor's Note").

34. In or about September 2019, Hooper presented the Doctor's Note to Wendy Withem.

35. Withem was payroll administrator for Trimble.

36. In or about September 2019, Hooper qualified for FMLA leave.

37. In or about September 2019, Withem provided Hooper with paperwork for her doctor to fill out to request FMLA leave ("FMLA Paperwork").

38. In or about September 2019, Hooper's doctor completed and submitted the FMLA Paperwork to Trimble.

39. In or about September 2019, Trimble received the FMLA Paperwork from Hooper's doctor.

40. In or about September 2019, Trimble was aware of Hooper's Conditions.

41. On or about September 25, 2019, Trimble denied Hooper's request for FMLA leave ("FMLA Denial").

42. Trimble did not provide a reason for the FMLA Denial.

43. The FMLA Denial was an adverse employment action.

44. In or about November 2019, Hooper returned to her doctor due to Hooper's Conditions.

45. In or about November 2019, Hooper's doctor again ordered her to take leave.

46. In or about November 2019, Hooper's doctor submitted a second FMLA request to Trimble ("Second FMLA Request").

47. On or about December 19, 2019, Trimble granted the Second FMLA Request ("December Letter").

48. On or about January 3, 2020, Trimble sent Hooper a letter saying, "This letter serves as notice this will be the last such leave which will be afforded to you moving forward." ("Audacious Admonition").

49. On or about January 3, 2020, Hooper was qualified for FMLA leave.

50. The Audacious Admonition was an adverse action.

51. The Audacious Admonition was an adverse employment action.

4

52. Trimble made the Audacious Admonition in order to interfere with Hooper's use of qualified FMLA leave.

53. Trimble made the Audacious Admonition in retaliation for Hooper's use of qualified FMLA leave.

54. Trimble made the Audacious Admonition because of Hooper's disability.

55. Trimble made the Audacious Admonition because of Hooper's perceived disability.

56. On or about January 22, 2020, Hooper met with Superintendent John Hurd, Union President Susan Hooper, Union Representative Debra Chonko, and Union Vice President Dave Limo ("Return-to-Work Meeting").

57. At the Return-to-Work Meeting, Hurd told Hooper that she needed to return to work immediately.

58. At the Return-to-Work Meeting, Hurd told Hooper that she would lose her job if she did not return to work immediately.

59. On or about January 22, 2020, Hooper qualified for FMLA leave.

60. Hurd held the Return-to-Work Meeting with Hooper to interfere with her use of FMLA leave.

61. Hurd held the Return-to-Work Meeting with Hooper in retaliation for her use of FMLA leave.

62. Hurd held the Return-to-Work Meeting with Hooper because of her disability.

63. Hurd held the Return-to-Work Meeting with Hooper because of her perceived disability.

64. On or about January 22, 2020, Hooper returned to work.

65. On or about February 1, 2020, Hooper told Billie Limo that Hooper's Conditions were still limiting her ability to work.

66. On or about February 1, 2020, Hooper informed Billie Limo that she needed an accommodation due to Hooper's Conditions ("Request for Accommodation").

67. On or about February 1, 2020, there were reasonable accommodations available that would have been effective.

68. Trimble did not grant an accommodation to Hooper.

69. Trimble did not engage in the interactive process to determine whether a reasonable accommodation was available.

70. On or about February 27, 2020, Hurd instructed to go to a doctor selected by Trimble ("Trimble's Doctor"), to get a second opinion about Hooper's Conditions.

71. Hooper went to Trimble's Doctor to get a second opinion about Hooper's Conditions.

72. Trimble's Doctor agreed with Hooper's doctor's diagnosis of Hooper's Conditions.

73. Trimble's Doctor instructed Hooper to take leave due to Hooper's Conditions.

74. On or about March 12, 2020, Hurd told Hooper that her employment would be terminated unless she resigned by May 22, 2020 ("Termination Notice").

75. The Termination Notice was an adverse action.

76. The Termination Notice was an adverse employment action.

77. Trimble gave Hooper the Termination Notice in order to interfere with her use of qualified FMLA leave.

78. Trimble gave Hooper the Termination Notice in retaliation for her use of qualified FMLA leave.

79. Trimble gave Hooper the Termination Notice because of her disability.

80. Trimble gave Hooper the Termination Notice because of her perceived disability.

81. On or about May 22, 2020, Trimble terminated Hooper's employment.

82. Trimble's termination of Hooper's employment was an adverse action.

83. Trimble's termination of Hooper's employment was an adverse employment action.

84. In the alternative, on or about May 22, 2020, Trimble forced Hooper to resign.

85. Trimble's forcing Hooper to resign was an adverse action.

86. Trimble's forcing Hooper to resign was an adverse employment action.

87. Trimble has a progressive disciplinary policy ("Discipline Policy").

88. A verbal warning is the lowest level of discipline in the Discipline Policy.

89. Hooper did not receive a verbal warning before the Termination.

90. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

91. Hooper did not receive a written warning before the Termination.

92. A termination is the highest level of discipline in the Discipline Policy.

93. Trimble knowingly skipped progressive disciplinary steps in terminating Hooper.

94. Trimble knowingly terminated Hooper's employment.

95. Trimble knowingly took an adverse employment action against Hooper.

96. Trimble knowingly took an adverse action against Hooper.

97. Trimble intentionally skipped progressive disciplinary steps in terminating Hooper.

98. Trimble intentionally terminated Hooper's employment.

99. Trimble intentionally took an adverse employment action against Hooper.

100. Trimble intentionally took an adverse action against Hooper.

101. Trimble knew that skipping progressive disciplinary steps in terminating Hooper would cause Hooper harm, including economic harm.

102. Trimble knew that terminating Hooper would cause Hooper harm, including economic harm.

103. Trimble willfully skipped progressive disciplinary steps in terminating Hooper.

104. Trimble willfully terminated Hooper's employment.

105. Trimble willfully took an adverse employment action against Hooper.

106. Trimble willfully took an adverse action against Hooper.

107. On or about May 22, 2020, Trimble terminated Hooper's employment in order to interfere with her use of qualified FMLA leave.

108. On or about May 22, 2020, Trimble terminated Hooper's employment in retaliation for her use of qualified FMLA leave.

109. On or about May 22, 2020, Trimble terminated Hooper's employment because of her disability.

110. On or about May 22, 2020, Trimble terminated Hooper's employment because of her perceived disability.

111. On or about May 22, 2020, Trimble forced Hooper to resign in order to interfere with her use of qualified FMLA leave.

112. On or about May 22, 2020, Trimble forced Hooper to resign in retaliation for her use of qualified FMLA leave.

113. On or about May 22, 2020, Trimble forced Hooper to resign because of her disability.

114. On or about May 22, 2020, Trimble forced Hooper to resign because of her perceived disability.

115. As a direct and proximate result of Trimble's conduct, Hooper suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF ADA

116. Hooper restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

117. Trimble treated Hooper differently than other similarly-situated employees based on her disabling condition.

118. Trimble treated Hooper differently than other similarly-situated employees based on her perceived disabling condition.

119. On or about May 22, 2020, Trimble terminated Hooper's employment without just cause.

120. Trimble terminated Hooper's employment based on her disability.

121. Trimble terminated Hooper's employment based on her perceived disability.

122. Trimble violated ADA when it discharged Hooper based on her disability.

123. Trimble violated ADA when it discharged Hooper based on her perceived disability.

124. Trimble violated ADA by discriminating against Hooper based on her disabling condition.

125. Trimble violated ADA by discriminating against Hooper based on her perceived disabling condition.

126. Hooper informed Trimble of her disabling condition.

127. Hooper requested accommodations from Trimble to assist with her disabilities.

128. Hooper's requested accommodations were reasonable.

129. There was an accommodation available that would have been effective and would have not posed an undue hardship to Trimble.

130. Trimble failed to engage in the interactive process of determining whether Hooper needed an accommodation.

131. Trimble failed to provide an accommodation.

132. Trimble violated ADA by failing to provide Hooper a reasonable accommodation.

133. As a direct and proximate result of Trimble's conduct, Hooper suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***

134. Hooper restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

135. Trimble treated Hooper differently than other similarly-situated employees based on her disabling condition.

136. Trimble treated Hooper differently than other similarly-situated employees based on her perceived disabling condition.

137. On or about May 22, 2020, Trimble terminated Hooper's employment without just cause.

138. Trimble terminated Hooper's employment based on her disability.

139. Trimble terminated Hooper's employment based on her perceived disability.

140. Trimble violated R.C. § 4112.02 when it discharged Hooper based on her disability.

141. Trimble violated R.C. § 4112.02 when it discharged Hooper based on her perceived disability.

142. Trimble violated R.C. § 4112.02 by discriminating against Hooper based on her disabling condition.

143. Trimble violated R.C. § 4112.02 by discriminating against Hooper based on her perceived disabling condition.

144. Hooper informed Trimble of her disabling condition.

145. Hooper requested accommodations from Trimble to assist with her disabilities.

146. Hooper's requested accommodations were reasonable.

147. There was an accommodation available that would have been effective and would have not posed an undue hardship to Trimble.

148. Trimble failed to engage in the interactive process of determining whether Hooper needed an accommodation.

149. Trimble failed to provide an accommodation.

150. Trimble violated R.C. § 4112.02 by failing to provide Hooper a reasonable accommodation.

151. As a direct and proximate result of Trimble's conduct, Hooper suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT III: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

152. Hooper restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

153. Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

154. Trimble is a covered employer under FMLA.

155. During her employment, Hooper qualified for FMLA leave.

156. During her employment, Hooper requested FMLA leave.

157. On or about September 25, 2019, Trimble denied Hooper's request for FMLA leave.

158. The Audacious Admonition interfered with Hooper's use of FMLA leave.

159. The Return-to-Work Meeting interfered with Hooper's use of FMLA leave.

160. Trimble terminated Hooper's employment to interfere with her use of FMLA leave.

161. Trimble forced Hooper to resign to interfere with her use of FMLA leave.

162. Trimble unlawfully interfered with Hooper's exercise of her rights under FMLA in violation of Section 105 of FMLA and section 825.220 of FMLA regulations.

163. Trimble violated section 825.300(c)(1) of FMLA and interfered with Hooper's FMLA rights when Trimble did not honor Hooper's approved use of FMLA leave.

164. As a direct and proximate result of Trimble's conduct, Hooper is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT IV: RETALIATION IN VIOLATION OF FMLA

165. Hooper restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

166. During her employment, Hooper utilized FMLA leave.

167. After Hooper utilized her qualified FMLA leave, Trimble retaliated against her.

168. Trimble retaliated against Hooper by terminating her employment.

169. Trimble willfully retaliated against Hooper in violation of 29 U.S.C. § 2615(a).

170. As a direct and proximate result of Trimble's wrongful conduct, Hooper is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Hooper respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i) Requiring Trimble to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v)    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Trimble to restore Hooper to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Hooper for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Hooper claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

                                                                                                        Respectfully submitted,

                                                                       */s/ Trisha Breedlove*_____
                                                                       Trisha Breedlove (0095852)
                                                                       Paul Filippelli (0097085)
                                                                       **THE SPITZ LAW FIRM, LLC**
                                                                       1103 Schrock Road, Suite 307
                                                                       Columbus, Ohio 43229
                                                                       Phone: (216) 291-4744
                                                                       Fax:   (216) 291-5744
                                                                       Email: trisha.breedlove@spitzlawfirm.com
                                                                       Email: paul.filippelli@spitzlawfirm.com
                                                                       *Attorneys for Plaintiff Julie Hooper*

## JURY DEMAND

Plaintiff Hooper demands a trial by jury by the maximum number of jurors permitted.

> */s/ Trisha Breedlove*
> Trisha Breedlove (0095852)
> Paul Filippelli (0097085)